CALVIN WHITE & another *vs.* THE SOUTH SHORE RAILROAD
COMPANY.

The proprietors of a railroad are responsible for the damages occasioned by con-
structing their road through and across a mill-pond, authorized by the legislature
to be raised in a navigable river; although in erecting the dam for raising such
pond, the conditions of the act are **not complied with.**

THIS was a proceeding before a sheriff's jury, for an assess-
ment of the damages, occasioned by the location and construc-
tion of the South Shore railroad, by means of an embankment
through and across the petitioners' mill-pond.

It appeared in evidence before the jury, that the petitioners'
mills and dam were on the Monatiquot river, a navigable
stream in Braintree, in which the tide ebbs and flows; that
the dam was erected under the authority conferred on Abraham
.Hobart by an act of the legislature, passed April 18th, 1837,
(*St.* 1837, *c.* 189); and that the dam was not erected in

the manner required by the act, there being no passage or sluiceway therein, of the width of twenty feet, for the passage of vessels, and no sufficient passage-way provided or maintained therein for the herring and other fish to pass up the river, as required by the act.

The sheriff was requested by the respondents to instruct the jury, that if the petitioners' mill-dam was not built in the manner specified by the act, and no sufficient passage-way for fish had been maintained therein, the petitioners were not entitled to any damages for the injury occasioned to their pond, by the erection of the respondents' road.

The sheriff refused so to rule, and the jury rendered a verdict and assessed damages accordingly, for the petitioners.

The court of common pleas, *Hoar,* J. presiding, set aside the verdict, on the ground of the exception taken before the sheriff, and the petitioners thereupon appealed to this court.

Other exceptions were taken in the course of the proceedings before the sheriff, but the foregoing was the only one considered by the court.

*W. Whiting* and *T. Russell,* for the petitioners, referred to *Commonwealth* v. *Union Fire & Marine Ins. Co.* 5 Mass. 230; *Quincy Canal* v. *Newcomb,* 7 Met. 276; *Cummings* v. *Perham,* 1 Met. 555; *Charles River Bridge* v. *Warren Bridge,* 7 Pick. 344, 371; *Pierce* v. *Somersworth,* 10 N. H. 369, 375; *Slee* v. *Bloom,* 5 Johns. Ch. 366; *Planters Bank* v. *Bank of Alexandria,* 10 Gill & J. 346; *Kellogg* v. *The Union Co.* 12 Conn. 7.

*J. J. Clarke,* for the respondents.   This dam being across a navigable river, there was no authority to build it, except under the act of the legislature; and the condition of that act not having been complied with, the dam was a public nuisance, which might be abated summarily by any one interested. *Arundel* v. *M' Culloch,* 10 Mass. 70; Angell on Tide Waters, (2d ed.) 111, 115, 117; *Commonwealth* v. *Church,* 1 Barr, 105; *Coates* v. *New York,* 7 Cow. 585; *Bailey* v. *Mayor, &c. of N. York,* 3 Hill, 531; *State* v. *Godfrey,* 3 Fairf. 361.   Why should we be obliged to sue out a *quo warranto,* or abate the nuisance, or get the petitioners indicted, when we are willing that they should enjoy all the rights claimed by them, which do not interfere with us ?       35 *

A party can claim no damages for injuries to a structure which is a public nuisance, or which, if not a nuisance, he has no legal right to maintain. *Garey* v. *Ellis*, 1 Cush. 306; *Morck* v. *Abel*, 3 B. & P. 35; *Wheeler* v. *Russell*, 17 Mass. 258, 281; *Robeson* v. *French*, 12 Met. 24; *Bosworth* v. *Swansey*, 10 Met. 363. Besides, this dam, if built according to the statute, would have been comparatively worthless, and the petitioners ought not to be allowed damages for injuries which they would not have suffered if they had obeyed the law.

FLETCHER, J. By a special act of the legislature, (*St.* 1837 *c.* 189,) Abraham Hobart was authorized to erect a mill-dam across Monatiquot river, a navigable stream, in which the tide ebbs and flows. A dam was accordingly erected and a pond raised; and the petitioners, having become the proprietors, and being in possession of the premises and privileges, seek to recover damages from the respondents, among other things, for the injury done to their mill-pond and privileges, by constructing an embankment through and across the pond.

At the trial before the jury, evidence was offered tending to show, that the dam erected under the act of the legislature was not erected in conformity with the provisions of the act; and the sheriff was requested to instruct the jury, that if they were satisfied that the dam was not built in the manner specified in the act, they should allow nothing for damages to the pond raised by the dam. But the sheriff declined to direct the jury as thus requested. The court of common pleas set aside the verdict rendered under this ruling, on the ground, that the petitioners had acquired no rights to the pond, because the dam had not been constructed in conformity with the act of the legislature.

As the petitioners had succeeded to the rights of Hobart, we shall speak of them, as if they had been originally authorized to erect the dam. The ground assumed by the respondents, and upon which the verdict was set aside, is, in effect, that the petitioners have forfeited all right to their dam, because it was not built according to the provisions of the act. But surely the respondents can have no right to take the petitioners' pond from them, because the dam was not constructed according to

the act. Whether or not the provisions of the act have been complied with, is a matter between the petitioners and the government.

A forfeiture can only be enforced by the government, and that in a direct proceeding for the purpose, and once for all. The petitioners are not obliged to try the question of the forfeiture of their privileges, under the act of the legislature, collaterally and incidentally, with the respondents and every person who may trespass upon the possessions and privileges of the petitioners. If the petitioners have not complied with the condition of the act, the government may, if it thinks proper, enforce the forfeiture. But the government may also, if it thinks proper, waive the performance of the condition. If the government does not exact a forfeiture, individuals have no right to set it up and rely upon it. There may be a tacit waiver by the government of the performance of the condition, by not insisting on it. If the government leaves the petitioners in the undisturbed enjoyment of their privileges and property, it certainly is not for the respondents to set up a forfeiture, to protect themselves from responsibility for the damage they have done to the petitioners.

This principle is so fully established by the authorities cited by the petitioners, that it is not necessary to go into a more particular consideration of it.

*Verdict established and certificate accordingly to the county commissioners.*